USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: 09 cv 5544, 10cv
                    5162
DATE FILED: 8/8/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X

COPIES MAILED

RAY ARGENTINA,

                        Petitioner,

        -against-                          09 Civ. 5544 (KMW)
                                           01 Cr. 245 (KMW)

UNITED STATES OF AMERICA,

                        Respondent.

-------------------------------------------------X

RAY ARGENTINA,

                        Petitioner,

                                           10 Civ. 5102 (KMW)
        -against-

WARDEN T.R. SNIEZEK,                       OPINION & ORDER

                        Respondent.

-------------------------------------------------X

KIMBA M. WOOD, United States District Judge:

        Ray Argentina ("Petitioner"), a prisoner currently incarcerated at the Federal Correction

Institution-Schuylkill ("FCI Schuylkill"), seeks writs of habeas corpus pursuant to 28 U.S.C.

§ 2241 and 28 U.S.C. § 2255.  Petitioner was convicted of various racketeering and other crimes,

following a jury trial in August and September of 2002.  On April 2, 2003, Petitioner was

sentenced to a custodial term of 324 months, and 5 years of supervised release.  Pursuant to a

mandate from the Second Circuit, Petitioner was resentenced on March 24, 2006 to a term of 324

months.  Petitioner is currently serving his sentence.

1

On March 2, 2009, Petitioner filed a pro se habeas petition, pursuant to 28 U.S.C. § 2241, with the United States District Court for the Middle District of Pennsylvania.  (See Argentina v. Sniezek, Petition under 28 U.S.C § 2241 ("Section 2241 Pet.").)  In his Section 2241 petition, Petitioner challenges the Bureau of Prisons' ("BOP") authority to set a restitution payment schedule through the Inmate Financial Responsibility Plan ("IFRP"), contending that such action violates the restitution payment schedule ordered by the sentencing court.  (Id.)  The petition was transferred to this Court on June 28, 2010.

On May 20, 2009, Petitioner filed a second pro se habeas petition, pursuant to 28 U.S.C. § 2255, with the United States District Court for the Southern District of New York.  (See Argentina v. United States, Petition under 28 U.S.C § 2255 ("Section 2255 Pet.").)  In his Section 2255 petition, Petitioner seeks to set aside his sentence on the grounds that: (1) the Government failed to disclose exculpatory evidence in the form of statements of Maurice Brown; (2) the Government committed misconduct by (a) making certain statements in its sentencing submission, (b) improperly vouching for a witness, Ken Cardona, and (c) engaging in selective and vindictive prosecution of Petitioner; (3) Petitioner's sentence was improperly based on the false testimony of Government witness Ken Cardona; and (4) Petitioner's trial and appellate counsel rendered ineffective assistance.[1]  (Id.).

For the reasons stated in this Opinion and Order, this Court DENIES both Petitioner's Section 2241 and Petitioner's Section 2255 petitions for writs of habeas corpus.

---

[1] Petitioner had also initially claimed that Titles 18 and 21 of the United States Code are unconstitutional, but he has since withdrawn that claim.  See Petitioner's Reply Mem. (Apr. 27, 2010), at 5-6.

I.      **Background**[2]

In March 2002, the Government filed a Superseding Indictment, in forty counts.  (See Decl. of Bertrand Madsen (Oct. 7, 2010), Ex. A at 11 ("Madsen Decl.").)  The counts most relevant to these petitions are as follows: Count One charged Petitioner and others with participating in a racketeering enterprise in violation of 18 U.S.C. § 1962(c).  Count Two charged Petitioner and others with conspiracy to violate the racketeering laws, in violation of 18 U.S.C. § 1962(d).  Count Six charged Petitioner with conspiracy to commit wire fraud, mail fraud, bank fraud, and fraud against the United States Department of Housing and Urban Development ("HUD"), in violation of 18 U.S.C. § 371.  Counts Thirty-two through Thirty-four charged Petitioner with substantive mail fraud, wire fraud, and HUD fraud violations, in violation of 18 U.S.C. §§ 2, 1010, 1341, and 1343.  Counts Thirty-eight and Thirty-nine charged Petitioner with conspiracy to distribute cocaine, as well as a substantive count of distribution of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846.  (See Government Mem. in Response to Argentina's Petition Pursuant to 28 U.S.C. § 2255 (Dec. 17, 2009), at 2 ("Opp.").)

On September 25, 2002, following a seven-week jury trial before the Honorable John S. Martin, the jury found Petitioner guilty of (1) racketeering conspiracy (Count Two); (2) conspiracy to commit mail fraud, wire fraud, bank fraud, and fraud against HUD (Count Six); (3) conspiracy to distribute and possess with intent to distribute narcotics (Count Thirty-eight); and (4) distribution and possession with intent to distribute cocaine (Count Thirty-nine).  (Madsen Decl. Ex. B.)

_____

[2] The parties' familiarity with the factual and procedural history of this case is assumed. Accordingly, only a general overview of the facts necessary to the disposition of Petitioner's habeas petitions is included in this opinion.

Prior to sentencing, Petitioner disputed the quantity of drugs that were attributable to him. (Opp. at 6.)  On April 2, 2003, Judge Martin conducted a hearing pursuant to United States v. Fatico, 579 F.2d 707 (2d Cir.1978), to address this issue.[3]  (Id.)  Following the hearing, Judge Martin sentenced Petitioner to a term of 324 months of incarceration and 5 years of supervised release.  (Madsen Decl. Ex. B at 3-4)

In the judgment, Judge Martin ordered Petitioner to pay an assessment of $400, as well as $586,000 in restitution, "[i]n full[,] immediately."  (Id. at 6-7.)  Language at the bottom of the last page of the judgment reads, "[u]nless the court has expressly ordered otherwise in the special instructions above, if the judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment."  (Id. at 7.)  Finally, Judge Martin ordered, as part of Petitioner's "special condition of supervision," that:

> [t]he defendant is to make restitution in the amount of $586,000 to be paid at a rate of 10% of his gross annual income.  If income on an annualized basis exceeds $30,000, 25% of any excess is to go towards restitution.

(Id. at 5.)

Petitioner appealed his conviction, arguing that: (1) Judge Martin abused his discretion by limiting defense counsel's cross-examination of Government witnesses at trial; (2) the Government made improper arguments during summation; (3) Judge Martin improperly calculated the drug quantity attributable to Petitioner; and (4) Petitioner was not sentenced in accordance with United States v. Booker, 543 U.S. 220 (2005).  See United States v. Argentina

---

[3] At the hearing, the Government called as a witness Ken Cardona, who had pled guilty to various crimes pursuant to a cooperation agreement with the Government and who testified as a Government witness at the trial.  (Opp. at 6.)

Defense counsel's principal argument at the hearing was that Cardona was not a credible witness.  (Id. at 7.)  Although Judge Martin recognized that Cardona's testimony contained some inconsistencies, he credited the testimony, based on consistent statements in his testimony.  (Id. at 8.)

(<u>Argentina I</u>), 137 F. App'x. 428 (2d Cir. 2005); <u>see also</u> Madsen Decl. Ex. A at Dkt. Entry No.

192.

 On July 1, 2005, the Second Circuit, by summary order, rejected all of Petitioner's

claims, except for his <u>Booker</u> claim.  <u>See</u> <u>Argentina I</u>, 137 F. App'x at 429.  Accordingly, the

Second Circuit affirmed Petitioner's conviction, but remanded the case for resentencing in light

of <u>Booker</u> and <u>United States v. Fagans</u>, 406 F.3d 138 (2d Cir. 2005).  <u>Id.</u>

 Upon remand, the case was assigned to this Court in light of Judge Martin's retirement.

At Petitioner's resentencing, held on March 24, 2006, Petitioner sought a second <u>Fatico</u> hearing

regarding drug quantity, claiming that he had new information that was not previously available

to Judge Martin.  (Opp. at 8-9.)  Concluding that there was no need to revisit Judge Martin's

credibility findings from the first <u>Fatico</u> hearing, this Court <u>re-sentenced</u> Petitioner to a term of

324 months, followed by 5 years of supervised release.  (Madsen Decl. Ex. D at 3-4.)  This Court

further ordered that Petitioner pay a special assessment of $400 and a restitution amount of

$586,000.  (<u>Id.</u> at 6.)

 Petitioner once again appealed his conviction to the Second Circuit, arguing that (1) this

Court erred in believing that, on remand pursuant to <u>Fagans</u>, 406 F.3d at 138, it was bound by

Judge Martin's credibility findings and was precluded from considering Petitioner's new

evidence; (2) that this Court violated Petitioner's Sixth Amendment rights by resentencing him

without conducting a second <u>Fatico</u> hearing.  <u>See</u> <u>United States v. Argentina</u> (<u>Argentina II</u>), 267

F. App'x 31, 32-33 (2d Cir. 2008).  The Second Circuit denied Petitioner's claims in a Summary

Order.  <u>Id.</u>

On March 2, 2009, Petitioner filed a <u>pro se</u> habeas petition, pursuant to 28 U.S.C. § 2241, with the United States District Court for the Middle District of Pennsylvania.   (Madsen Decl. Exs. E & F.)  The petition was transferred to this Court on June 28, 2010.

On May 20, 2009, Petitioner filed a second <u>pro se</u> habeas petition, pursuant to 28 U.S.C. § 2255, with this Court.  (<u>See</u> Section 2255 Pet.)

This Court will first address Petitioner's Section 2241 petition, and then address Petitioner's Section 2255 petition.

II.   **Petitioner's Section 2241 Petition**

A.      <u>Background</u>

On March 2, 2009, Petitioner filed the instant Section 2241 habeas petition with the United States District Court for the Middle District of Pennsylvania against Walter T.R. Sniezek ("Respondent"), Warden of FCI Schuylkill.  (<u>See</u> Section 2241 Pet.)

In his Section 2241 petition, Petitioner asserts two claims.  First, he claims that the BOP's monetary withholdings from him during his time of imprisonment, through the IFRP, violated Judge Martin's 2003 Sentencing Order because, according to Petitioner, restitution payments were to begin only after his release from incarceration, while he was on supervised release .  (<u>See</u> Section 2241 Pet. at 7.)  Petitioner claims that the BOP was improperly exercising a judicial function by collecting payments from him while he is incarcerated, because "[o]nly an individual sentencing court may impose a specifically timed schedule of payments to be collected during one's imprisonment . . . [and] these plans may <u>not</u> be delegated to the B.O.P." (<u>Id.</u> at 9.) Second, Petitioner disputes that the IFRP program is actually voluntary, asserting that the program constitutes "extortion of one's family," in light of the penalties associated with refusing to participate in the program. (<u>Id.</u> at 8; 10-12.)

Petitioner asks that the BOP be directed: (1) not to collect more than 10% of his gross in-prison income, not to exceed $15.60 per annum; (2) to refund previously collected funds that exceed that amount; and (3) to adjust his IFRP contract accordingly for the remainder of his 324-month term of imprisonment. (Id. at 13.) Finally, he requests that sanctions be imposed on those federal employees who administered his IFRP contract. (Id.)

On April 21, 2009, the United States Attorney's Office in Pennsylvania, on behalf of Respondent, filed a response to the Section 2241 Petition, in which it argued that: (1) the BOP was applying the IFRP with respect to Petitioner in a manner consistent with Judge Martin's intent; and (2) it is within the discretion of the BOP to impose consequences for an inmate's failure to participate in the IFRP. (See Madsen Decl. Ex. G at 7-12.)

On May 21, 2010, the Honorable John E. Jones III of the Middle District of Pennsylvania, issued a Memorandum and Order, in which he stated the following:

> It is possible that the sentencing court had information about Argentina's finances before it that indicated that he had the means to make an immediate payment of $586,000 in restitution. If, on the other hand, the district court had information indicating that Argentina could not make an immediate payment and only set a schedule of payments for the period of time during which he would be on supervised release, thereby leaving it to the discretion of the BOP to determine the amount and schedule of payments during his term of imprisonment, the sentencing court did not follow the dictates of the MVRA [Mandatory Victims Restitutions Act].[4]

(Madsen Decl. Ex. H at 8.) Judge Jones cited a decision holding that, when a court orders immediate payment of restitution with knowledge that the defendant cannot make full restitution, such orders are "indistinguishable in principle from outright delegations of authority to the Bureau of Prisons," which is impermissible. (Id. (citing United States v. Corley, 500 F.3d 210,

---

[4] The MVRA states in part, that, after determining the amount of restitution owed to each victim, a sentencing court shall "specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid." 18 U.S.C. § 3664(f)(2).

227-28 (3d Cir. 2007).)  Judge Jones directed the Respondent "to file a supplemental brief along with materials relating to the sentencing court's consideration of Argentina's finances."  (Id.)

On June 4, 2010, Respondent filed a Supplemental Response, arguing that the Section 2241 Petition should be transferred to the Southern District of New York, pursuant to 28 U.S.C. § 1404(a), because this Court had knowledge of Argentina's resources at the time that the Court imposed the sentence. (Madsen Decl. Ex. I at 7.)  Although Petitioner was given the opportunity to file a reply to the Supplemental Response, he did not do so. (Madsen Decl. Ex. J at 4.)

By Order dated June 28, 2010, the Section 2441 petition was transferred to this Court. (Id. at 4-5.)

B.      Analysis

Plaintiff's contention that the Sentencing Court unlawfully delegated to the BOP the Court's authority to establish a schedule for Petitioner's restitution payments during his course of his incarceration is without merit.

Most significantly, on March 24, 2006, this Court re-sentenced Petitioner, based on a mandate from the Second Circuit to vacate Petitioner's sentence and to resentence him. (See Madsen Decl. Ex. C & Ex. D at 1.)  Accordingly, this Court's 2006 Sentencing Order—not Judge Martin's 2003 Sentencing Order—controls the terms of Petitioner's incarceration.

In its 2006 Sentencing Order, this Court assessed Petitioner's finances, and ordered Petitioner to make a "[l]ump sum payment of $400 due immediately" and to pay the balance of "the total criminal monetary penalties" pursuant to a specific schedule:

> The amount of $560,000 [is] to be paid at a rate of 10% of [Petitioner's] gross annual income.  If income on an annualized basis exceeds $30,000, 25% of any excess is to go towards restitution.

(Id. at 7.)

The Second Circuit has repeatedly approved restitution payment schedules that are formulated based on a percentage of a petitioner's monthly income. See United States v. Kinlock, 174 F.3d 297, 301 (2d Cir. 1999) ("While we recognize the difficulty the district court may encounter in fashioning a precise dollar amount for the period of incarceration, a payment schedule expressed as a percentage of the defendant's monthly income while incarcerated, e.g. 10% of monthly income, is satisfactory."); United States v. Ismail, 219 F.3d 76, 78 n.1 (2d Cir. 2000) (noting that the Legal Aid Society had informed the Court that, "in situations involving indigent defendants, the usual practice is to impose a payment plan that is expressed as a percentage of the defendant's income") (quotations omitted); Guirand v. United States, No. 01cr 156, 2004 WL 1878690, at *2 (S.D.N.Y. Aug. 23, 2004) (noting that "the payment schedule is set at a percentage of Petitioner's monthly income, and thus, inherently considers and adjusts for Petitioner's financial situation"). In sum, this Court's payment schedule—set as a percentage of Petitioner's income—is permissible, and does not delegate to the BOP this Court's responsibility of devising a restitution payment schedule.[5]

---

[5] With respect to the time period between Petitioner's first sentencing in 2003, and his resentencing in 2006, Petitioner did not, in fact, make an immediate full payment upon his imprisonment. (Madsen Decl. Ex. H at 7.) Rather, the BOP began collecting money from him during his period of imprisonment under the IFRP. (Id.) It is not clear to this Court however, the exact percentage amount that the BOP was collecting from Petitioner during that time period before this Court resentenced Petitioner in 2006.

Because this Court vacated Judge Martin's sentence and ordered that "[t]he amount of $560,000 [is] to be paid at a rate of 10% of [Petitioner's] gross annual income," it is incumbent upon the BOP to refund to Petitioner any amount that it may have collected in excess of the rate of 10% of Petitioner's annual income during that approximately three-year period.

If the BOP did, in fact, collect more than 10% from Petitioner, the BOP—through the United States Attorney's Office—shall notify this Court and the Petitioner of that fact by Friday, August 26, 2011. At that point, this Court will entertain any such motion resulting from the receipt of such information.

Petitioner's second claim—that the IFRP program amounts to "extortion of one's family" in light of the penalties associated with refusing to participate in the program, see Madsen Decl. Ex. F at 8 —also lacks merit.  Courts in this Circuit have consistently upheld the validity of the IFRP.  In one decision, a petitioner similarly claimed that his participation in the IFRP "was coerced because his refusal to so participate would have incurred 'consequences' such as loss of housing privileges."  Solis v. Menifee, No. 99 Civ. 9072, 2000 WL 1401633, at *2 (S.D.N.Y. Sept. 25, 2000).  The court rejected Petitioner's claim, noting that:

> It is true that for inmates electing not to participate in the IFRP, the consequences of non-participation may be the loss of favorable housing privileges, non-assignment to work details outside the secure perimeter, or non-authorization of a release gratuity. . . . It is perfectly understandable that this arrangement, characterized by the government as voluntary . . . does not seem so to the prisoner.  But it is within the Bureau's discretion to decide that a prisoner who does not choose to participate in a program designed to help him meet his obligations is not a good candidate for certain privileges or rehabilitation programs.  The IFRP has been uniformly upheld against similar challenges, and the Second Circuit has found the regime fully consistent with the Bureau of Prison's authorization, under the direction of the Attorney General, to provide for rehabilitation and reformation.

Id. (internal citations, quotations, and alterations omitted); see also United States v. Neal, 207 F. App'x 700, 702 (7th Cir. 2006) (finding that "the BOP is authorized to use the Inmate Financial Responsibility Program to ensure that inmates make good-faith progress toward satisfying their court-ordered obligations," and that the loss of privileges for refusing to participate "does not amount to coercion or make his contract with the BOP illegal").

Finally, Petitioner's claim that he is entitled to the return of any payment collected by the BOP in excess of $15.60 per annum has no merit.  First, this Court's 2006 Sentencing Order does not set a maximum amount that the BOP may collect pursuant to the IFRP.  Second,

> [t]he MVRA requires the sentencing court to set a restitution repayment schedule.  The sentencing court did that here.  The MVRA does not prohibit an inmate from voluntarily making larger or more frequent payments than what was set by the sentencing court.  Nor does it limit the authority of the BOP, through the IFRP, to offer incentives to inmates to

pay their restitution obligations in larger amounts or at a faster rate than the court has required.

U.S. v. Lemoine, 546 F.3d 1042, 1046 (9th Cir. 2008).  Accordingly, Petitioner's claim for a return of funds has no merit.

C.      Conclusion

For the foregoing reasons, Petitioner's Section 2241 petition for habeas corpus is DENIED.

## III.    **Petitioner's Section 2255 Petition**

A.      Background

On May 20, 2009, Petitioner filed the instant pro se Section 2255 habeas petition with this Court, seeking to set aside his sentence on the grounds that: (1) the Government failed to disclose exculpatory evidence in the form of statements of Maurice Brown; (2) the Government committed misconduct by (a) making certain statements in its sentencing submission, (b) improperly vouching for a witness, Ken Cardona, and therefore violating Petitioner's rights under the Due Process Clause of the United States Constitution, and (c) engaging in vindictive and selective prosecution of Petitioner; (3) Petitioner's sentence was improperly based on the false testimony of Government witness Cardona; and (4) Petitioner's trial and appellate counsel rendered ineffective assistance.  (Section 2255 Pet).

B.      Analysis

1.      Procedurally Barred Claims

Several of Petitioner's claims are procedurally barred on the ground that either (1) they have been raised and rejected by the Second Circuit; or (2) they were not raised on appeal and have thus been waived.

a.      Claims That Were Raised and Rejected by the Second Circuit

"It is well established that a § 2255 petition cannot be used to relitigate questions which were <u>raised and considered</u> on direct appeal." <u>United States v. Sanin</u>, 252 F.3d 79, 83 (2d Cir. 2001) (emphasis added) (quotations and citations omitted); <u>see also</u> <u>United States v. Perez</u>, 129 F.3d 255, 260 (2d Cir. 1997) ("A § 2255 motion may not relitigate issues that were raised and considered on direct appeal.").

Two of Petitioner's claims in his Section 2255 Petition were raised and rejected on direct appeal to the Second Circuit: (1) that the Government improperly vouched for Government witness Cardona, and therefore violated Petitioner's rights under the Due Process Clause of the United States Constitution; and (2) that Petitioner's sentence, and specifically the drug quantity calculation, was improperly based on the false testimony of that same witness.  (<u>See</u> Section 2255 Pet. 22-26; 31-41.)

In his first appeal, Petitioner argued that the Government improperly vouched for Cardona:

> [I]n another attempt to undermine the defense attacks against the cooperators, the prosecutor improperly vouched for the witnesses, stating: "Why, oh why in the world, when you could point to real criminals, would you make up a big lie and point to someone else, when you could only get caught?  Whether the government is so stupid they wouldn't catch it, you could be sure Judge Martin would.  Why take the chance?  That's it.  That's all you need to know."  In this manner, the prosecutor simultaneously urged the jurors that they should find the cooperators credible, not only because the prosecutors and agents did, but because Judge Martin did as well.  Many courts have held that these types of vouching comments are improper insofar as they inject the credibility of the prosecutor's office into the trial.

<u>See</u> Brief for Defendant-Appellant Ray Argentina at 50 (June 22, 2004), <u>Argentina I</u>, 137 F. App'x at 428 [hereinafter "Appellant's Br. I"].  Although the Second Circuit found that certain statements "were improper," it held that "this misconduct was not egregious, and therefore does not merit vacatur." <u>Argentina I</u>, 137 F. App'x. at 429.

In his first appeal, Petitioner also argued that the Government failed to prove drug

quantity because Cardona's testimony with respect to that fact was inconsistent and unreliable:

> In this case, the court concluded that Defendant was responsible for distributing 15-50
> kilograms of narcotics, largely based upon the allegation that from 1998 to January, 2000,
> Cardona sold one kilogram of cocaine per month to Schwamborn, and Defendant shared
> the resulting profits. A close review of the <u>Fatico</u> hearing, however, reveals that the
> government failed to prove that Defendant was responsible for distributing any more than
> 5-15 kilos. Accordingly, the sentence must be vacated and Defendant re-sentenced. . . .
> To appreciate the government's failure of proof in this regard, it is important to
> understand the discrepancies in Cardona's testimony, and how his allegations changed in
> the course of the trial and sentencing proceedings.

Appellant's Br. at 52-53. The Second Circuit rejected this argument, finding that "[t]he district

court did not err in calculating Argentina's Guidelines sentence. Specifically, the district court's

drug quantity finding was not clearly erroneous." <u>Argentina I</u>, 137 F. App'x. at 429. In fact, on

Petitioner's second appeal, the Second Circuit stated that it had "specifically affirmed Judge

Martin's drug quantity determination on Argentina's first appeal." <u>Argentina II</u>, 267 F. App'x. at

32.

Accordingly, Petitioner's claims (1) that the Government committed misconduct by

engaging in improper vouching; and (2) that his sentence was improperly based on the false

testimony of Government witness Cardona were considered and rejected on direct appeal, and

are thus dismissed as procedurally barred.

### b.   Claims That Were Not Raised on Direct Appeal

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct

review, the claim may be raised in habeas only if the defendant can first demonstrate . . . 'cause'

and actual 'prejudice.'"  <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998); <u>see also United</u>

<u>States v. Warren</u>, 335 F.3d 76, 79 (2d Cir. 2003) ("If the defendant fails to raise a claim of error

on direct appeal, habeas relief [for that claim] is generally available only upon a showing of

cause and prejudice."). "[C]ause under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him." Coleman v. Thompson, 501 U.S. 722, 753 (1991) (quotations omitted).

Petitioner did not raise on direct appeal two of the claims that he now raises in his Section 2255 petition: (1) that the Government failed to disclose exculpatory evidence in the form of statements of Maurice Brown; and (2) that the Government committed misconduct by engaging in selective and vindictive prosecution of Petitioner. See Appellant's Br. I; see also Brief of Defendant-Appellant Ray Argentina (Feb. 14, 2007), Argentina II, 267 F. App'x at 31 [hereinafter "Appellant's Br. II"]. Petitioner has made no attempt in his papers accompanying his Section 2255 petition to establish cause for that failure. Accordingly, these claims are dismissed as procedurally barred.

　　　　　2.　　Remaining Claims

After dismissing those four claims that are procedurally barred,[6] Petitioner's remaining claims in his Section 2255 petition are as follows: (1) the Government committed misconduct by making certain statements in its sentencing submission; and (2) Petitioner's trial and appellate counsel rendered ineffective assistance.

　　　　　a.　　The Government's Sentencing Submission

Petitioner claims that submissions made by the Government in connection with Petitioner's 2006 resentencing constituted a "veritable written tirade that depicted [him] as a cold-blooded nerdowell [sic]" because the Government described Petitioner as a member of the Luchese Crime Family and La Cosa Nostra, and mentioned his prior conviction for bank robbery. (Section 2255 Pet. at 22-23.)

---

[6] The Court need not address the merit of those four claims, after dismissing them on procedural grounds. However, the Court notes that those claims also lack merit.

In the Government's 2006 sentencing submission, the Government properly addressed those factors outlined in 18 U.S.C. § 3553(a), which include "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Government also described Petitioner's prior convictions, which are of course relevant to any defendant's criminal history category. Accordingly, those statements made by the Government are proper.

b.      <u>Ineffective Assistance of Counsel Claim</u>

Petitioner asserts in his Section 2255 petition that both his trial counsel and appellate counsel provided ineffective assistance.[7] (<u>See</u> Section 2255 Pet. at 42-55.) In response, the Government has submitted sworn affirmations from both counsel. (<u>See</u> Opp. Exs. B & C.)

1.      <u>Applicable Law</u>

To succeed on an ineffective assistance of counsel claim, Petitioner must meet the two-prong test articulated by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 694 (1984), which requires showing that counsel's conduct was (1) objectively unreasonable, and (2) prejudicial to the petitioner. <u>See</u> <u>Mayo v. Henderson</u>, 13 F.3d 528, 533-34 (2d Cir. 1994) (applying the <u>Strickland</u> standard to claim of ineffective assistance of appellate counsel).

With respect to the first prong of <u>Strickland</u>:

> The court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.

---

[7] Robert Y. Altchiler, Esq. ("Trial Counsel") represented Petitioner at trial, on Petitioner's first appeal to the Second Circuit, and at the 2006 resentencing in this Court. Jane Elizabeth Lee, Esp. ("Appellate Counsel") represented Petitioner on his second appeal to the Second Circuit. (Opp. at 31 n.4.)

United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 689).

"[S]trategic choices made . . . will seldom if ever be found wanting.  Because advocacy is an art

and not a science, and because the adversary system requires deference to counsel's informed

decisions, strategic choices must be respected in these circumstances if they are based on

professional judgment." Strickland, 466 U.S. at 681 (citations and quotations omitted).

Moreover, a decision not to call a certain witness "fall[s] squarely within the ambit of trial

strategy and, if reasonably made, cannot support an ineffective assistance claim." United States

v. Eisen, 974 F.2d 246, 265 (2d Cir. 1992).

Even if an attorney's performance is found to be objectively unreasonable, the defendant

must also show prejudice.  "[A] criminal defendant alleging prejudice must show 'that counsel's

errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

Lockhart v. Fretwell, 506 U.S. 364, 369 (1993) (citing Strickland, 466 U.S. at 687).

2.      Application

a.      Trial Counsel

Petitioner contends that Trial Counsel was ineffective because he did not call Maurice

Brown, a criminal associate of Cardona, to testify as a witness.  (See Section 2255 Pet. at 42-43;

51-52.)

The Government has submitted a sworn affirmation from Trial Counsel, in which Trial

Counsel explains that there were serious risks in calling Mr. Brown as a witness.  (See Opp. Ex.

B, Altchiler Affirmation, Dec. 15, 2009 ("Altchiler Aff").)  Specifically, Mr. Brown's testimony

could have "open[ed] the door to the admission of extraordinarily prejudicial evidence the

government had concerning evidence of uncharged crimes" of Petitioner, and may have

"implicate[d] Mr. Argentina in other criminal activity that could only be brought into the case if

16

the defense opened the door to it." (Id. ¶3.)  Trial Counsel concluded that it would be

"extraordinarily risky" to have Mr. Brown testify, and, that "knowing how potentially dangerous

Maurice Brown's testimony could be" for his client, he "had a better shot at winning the case

without Maurice Brown than with him." (Id. ¶ 6; 4.)  Finally, Trial Counsel states that he

"explained each aspect of the case to [Petitioner] in detail," and "made clear to him [his] views

concerning the relative potential benefits and dangers arising from the potential testimony of

Brown, and why the case and he were far better off without Brown."[8] (Id. ¶ 9.)

      Petitioner's ineffective assistance of counsel claim with respect to Trial Counsel is denied

without a hearing.  "The decision whether to call any witnesses on behalf of the defendant, and if

so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in

almost every trial." United States v. Smith, 198 F.3d 377 (2d Cir. 1999) (citing Eisen, 974 F.2d

at 265).  Such a judgment call "fall[s] squarely within the ambit of trial strategy, and, if

reasonably made, cannot support an ineffective assistance claim." Id. at 386; see also Eisen, 974

F.2d at 265 (finding that "[i]t was a reasonable tactical decision to rely exclusively on attacking

the Government's witnesses and presenting independent testimony rather than to subject [another

potential witness] to all of the risk attendant on cross-examination.").

      Further, Petitioner does not provide any sworn statement from Brown.  Rather, Petitioner

simply asserts that Brown's testimony would have been favorable to him.  Accordingly,

Petitioner fails to show that, had Brown testified, "there is a reasonable probability that the

outcome of the proceeding would have been different." Mayo, 13 F.3d at 534; see also

---

[8] Petitioner claims that Trial Counsel ignored his pleas to subpoena Brown.  However, Trial
Counsel states that he encouraged Petitioner to hire an investigator to locate Brown, but that
Petitioner insisted that he could locate Brown through other means. (Id. ¶ 10.)
     Trial counsel explains that he was unable to "locate Brown, interview him, and have him
available as a potential witness," due to of Petitioner's "unwillingness to undertake the steps I
urged him to take." (Altchiler Aff. ¶ 10.)

Strickland, 466 U.S. 694.    In sum, on the basis of the sworn statements of Trial Counsel, it is

clear that Trial Counsel did not render ineffective assistance.  Rather, he thoughtfully explored

and considered whether to call Maurice Brown to testify.

b.    <u>Appellate Counsel</u>

Argentina also argues that Appellate Counsel rendered ineffective assistance by: (1) not

raising issues regarding Cardona's credibility on Petitioner's second appeal; (2) not visiting

Petitioner in prison or discussing the case with Petitioner; and (3) not conferring with an outside

attorney recommended by Petitioner.  (Section 2255 Pet. at 44-45.)

As with Trial Counsel, the Government has submitted a sworn affirmation from

Appellate Counsel.  (<u>See</u> Opp. Ex. C, Lee Affirmation, Dec. 13, 2009 ("Lee Aff").)

With respect to Petitioner's first contention—that Appellate Counsel did not raise issues

regarding Cardona's credibility on Petitioner's second appeal—Appellate Counsel did, in fact,

raise the issue of Cardona's credibility on Petitioner's second appeal, to the extent that she was

able to do so.  Appellate Counsel explains that, because Petitioner's conviction had already been

affirmed by the Second Circuit in 2005, and because the Second Circuit remanded the case for

resentencing pursuant to <u>Booker</u> and <u>Fagans</u>:

> The limited issue on appeal was . . . whether the District Court's resentencing of
> Argentina was proper.  In that regard, I raised the issue of the credibility of Cardona's
> testimony in the only way that it could have been raised—whether the District Court had
> sufficiently assessed Cardona's credibility and whether it properly exercised its discretion
> in not having another <u>Fatico</u> hearing in connection with Argentina's resentencing.   In
> support of this argument, I detailed and highlighted all of the factual inconsistencies in
> Cardona's testimony at the <u>Fatico</u> hearing in a nine page, 'Statement of the Facts' section
> of the brief.

(Lee Aff. ¶ 17.)

With respect to Petitioner's second contention—that Appellate Counsel did not visit him

in prison and did not discuss the case with him—Appellate Counsel states in her affirmation that

she discussed the case with Petitioner on several occasions. (Id. ¶¶4-6; 14-15.) Moreover, Appellate Counsel states that she sent Petitioner transcripts of various court proceedings, as well as copies of briefs filed by her and by the Government. (Id. ¶¶ 6-9.) Finally, the Government has enclosed three letters that Appellate Counsel sent to Petitioner, each containing discussions of substantive issues. (Opp. Ex. D.) Thus, although Appellate Counsel did not visit Petitioner in prison, she sufficiently discussed his case with him.

Finally, with respect to Petitioner's third contention—that Appellate Counsel did not confer with an outside attorney recommended by Petitioner—Appellate Counsel states that, at Petitioner's request, she discussed the case with an outside attorney, Mr. Richard Langone, Esq., on two occasions. (Lee Aff. ¶ 10.)

Accordingly, Petitioner has not shown that Appellate Counsel's performance was ineffective. Moreover, Petitioner has not shown prejudice, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial." Lockhart, 506 U.S. at 369 (citations omitted). In sum, on the basis of the sworn statements of Appellate Counsel, it is clear that Petitioner's Appellate Counsel did not render ineffective assistance.

## IV.    Conclusion

For the foregoing reasons, Petitioner's Section 2241 and Section 2255 habeas petitions are DENIED.

Petitioner has failed to make any substantial showing of a denial of a constitutional right. The Court therefore declines to issue a Certificate of Appealability. See 28 U.S.C. § 2253. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is ordered to close both of Petitioner's cases.

SO ORDERED.

Dated: New York, New York
August   8  , 2011

                                        Kimba M. Wood
                              United States District Judge